62 So.2d 466

### VAUGHAN v. VAUGHAN.

#### 4 Div. 719.

Supreme Court of Alabama.

Dec. 4, 1952.

Rehearing Denied Jan. 19, 1953.

338

Baldwin & Baldwin, Andalusia, for appellant.

Prestwood & Prestwood, Andalusia, for appellee.

FOSTER, Justice.

This case comes here on appeal by the defendant from a final decree, in equity, granting relief to the complainant. The bill was filed on April 8, 1947, and is in the nature of a bill of review and seeks to set aside a decree of divorce rendered on the 11th day of January 1947 by the Circuit Court, in Equity, of Covington County. The bill undertakes to make out a case of fraud in procuring the divorce decree, which was rendered in favor of complainant's husband, W. G. Vaughan.

We will not at this time undertake to set out the allegations of the bill relied upon to give it equity as a bill in the nature of a bill of review, but will proceed to a preliminary matter which has to be dealt with.

After the divorce decree was rendered on January 11, 1947, W. G. Vaughan, the complainant in that suit and the husband of complainant in the instant suit, married Grace Holliday on January 18, 1947. The said W. G. Vaughan died on the 7th day of April 1949 in an automobile accident in a foreign country. He was an officer in the United States Army and was in service at the time of his death. Before his death the said W. G. Vaughan appeared in the instant cause and demurred to the bill and also demurred to the several amendments to the bill. Some of his demurrers were overruled and some were sustained. And finally before he died, the bill was again amended on March 8, 1949, to which amendment a demurrer was filed for him by his counsel on April 7, 1949, the day in which he died.

On October 26, 1949, the complainant again amended the bill by making as a party respondent Grace Holliday Vaughan, alleging that she resided in Louisiana, Missouri, and prayed that she be required to appear and make defense against the bill. In making her a respondent the death of W. G. Vaughan was not shown to be suggested to the court or alleged in any matter of record, and the amendment does not pray for an order substituting Grace Holliday Vaughan for the said W. G. Vaughan by reason of his death, but simply makes her a party as if she and W. G. Vaughan were thereby the parties respondent, although W. G. Vaughan was then dead. There was service perfected on Grace Holliday Vaughan, and later a decree pro confesso was rendered against her. And on December 2, 1949, the said Grace Holliday Vaughan appeared by her counsel, who is the same counsel that had been representing W. G. Vaughan, and demurred to the bill as amended, adopting the grounds of demurrer which had been theretofore filed by W. G. Vaughan as severally amended. On December 21, 1949, she made a motion to set aside the decree pro confesso against her. On the same day the court entered an order setting aside the decree pro confesso. On July 26, 1950, it entered a decree overruling the demurrer of said Grace Holliday Vaughan to the bill as amended, referring to her demurrer as being dated December 2, 1949. On August 23, 1950, the said Grace Holliday Vaughan filed an answer to the bill as amended, in substance denying its allegations without elaborating. On the 15th day of April 1952, the court made an order reciting that W. G. Vaughan had died and left a last will and testament which had been filed and probated in the Probate Court of Covington County, whereby the complainant in this cause was named and qualified as executrix and that, therefore, it was necessary to appoint an administrator ad litem to represent the estate. The court then proceeded to appoint an administrator ad litem and made an order substituting him as a party respondent in lieu of said W. G. Vaughan. As its date indicates, this order of substitution was made more than twelve months after the death of W. G. Vaughan. On that day (April 15, 1952), Grace Holliday Vaughan moved the court, in writing, to dismiss the bill of complaint on the ground that twelve months had

elapsed after the death of W. G. Vaughan, and there had been no revivor as required by Equity Rule 35, Code 1940, Tit. 7, Appendix. That motion was considered and heard on that day, referring to the fact that on January 30, 1952, the judge made a bench note appointing said administrator ad litem, but said order was not extended on the minutes of the court nor a final order of appointment made. The decree of the court further recites that after the death of W. G. Vaughan the court offered to appoint his attorney of record as administrator ad litem, but such attorney declined to serve. It was further recited that the parties agreed in open court that W. G. Vaughan died in April 1949, and left a last will and testament which was probated in said county, naming the complainant as executrix, and that she was appointed executrix and letters testamentary had been issued to her.

(The will was not attached to any of those pleadings; but it appears as a part of the testimony given in the case, whereby it provided not only for this complainant to be the executrix but that she should have one-half of W. G. Vaughan's estate, and the other half should be divided equally between their children, four in number, naming them.) The court thereupon ordered, adjudged and decreed that the motion of said Grace Holliday Vaughan, to which we have referred, be overruled and denied. Thereupon, by her counsel, Grace Holliday Vaughan made a motion to set aside the order appointing said administrator ad litem on the ground that it does not appear that the interest of the estate of W. G. Vaughan, deceased, required representation. On said date (April 15, 1952), said motion to set aside the appointment of the administrator ad litem was heard and acted upon by the court. Whereupon the court entered a decree reciting that the court deems it wise and necessary to appoint an administrator ad litem, and that respondent Grace Holliday Vaughan is without any authority to insist upon the motion to dismiss the bill pursuant to Equity Rule 35, and because of such want of authority, and other grounds stated above, the court overruled the motion.

Other pleadings were filed which were disposed of by the court in a way not material here to state in detail. Issue was joined on the answer to the bill as amended.

Our first inquiry is whether the suit abated for a failure to make an order of substitution within twelve months after the death of W. G. Vaughan, as required by Equity Rule 35, and section 153, Title 7, Code, as amended by the Act of October 9, 1947, General Acts 1947, p. 543, Code 1940, Tit. 7, § 153(1).

We have interpreted Equity Rule 35 and section 153, supra, as mandatory to require the order of substitution to be made within twelve months after the death of a party; but that the twelve months period is a statute of limitations, not a condition to the further prosecution of the suit, and that it may be waived if the proper person appears and takes action in the trial as though the suit had not abated and the order of substitution had been made within twelve months. Osbourn v. Lo Bue, 256 Ala. 121, 53 So.2d 610; Webster v. Talley, 251 Ala. 336, 37 So.2d 190.

That is the status of this record. As we have shown, W. G. Vaughan, the sole respondent in this bill in the nature of one of review, died April 7, 1949. On October 26, 1949, complainant filed an amendment to the bill making Grace Holliday Vaughan a party respondent, but there was no order substituting her as the successor to W. G. Vaughan. After a decree pro confesso was rendered against her, she appeared and filed a demurrer and then moved to set aside the decree pro confesso. This motion was granted by the court. Her demurrer was thereafter overruled. On August 23, 1950, she made answer to the bill. Up to that time there was no objection to the further prosecution of the suit without an order of substitution, and no objection was made until April 15, 1952. An order was made April 15, 1952, whereby Hall was appointed administrator ad litem, and he was then by order substituted as a party for W. G. Vaughan, deceased. That order stated that Vaughan left a will in which complainant was named executrix and she had qualified as such, and

thereby made an administrator ad litem necessary.

It was then for the first time that Grace Holliday Vaughan took a step to have the suit dismissed because not revived within the twelve months period. In overruling her motion, the court, as we have shown, recited the history of the proceeding which was pertinent, including the death of W. G. Vaughan, and that he left a will, and that complainant was named executrix and had qualified as such. The administrator ad litem appeared, accepted the appointment, and made answer denying the allegations of the bill as amended. The administrator ad litem made no complaint as to his substitution or that the suit had abated by the death of W. G. Vaughan, and not then subject to revivor. He is not here complaining and has not joined in this appeal. It is only Grace Holliday Vaughan who is here complaining. But we think she waived the claim that she was not ordered substituted for W. G. Vaughan within twelve months after his death because before the expiration of twelve months from his death she filed a demurrer to the bill and moved to set aside the decree pro confesso, and after said period she filed an answer to the bill. Up to that time she did not contend that the suit had abated for the failure to order a substitution within twelve months, and made no such contention until April 15, 1952, which was more than three years after his death, and during that time proceedings were had by her which were not consistent with an abatement of the suit by the death of W. G. Vaughan.

We have reached the conclusion, as stated above, that both appellant and the administrator ad litem waived the court's failure to make within twelve months an order substituting a successor for W. G. Vaughan as a party respondent.

■ We again refer to the Act of October 9, 1947, Code 1940, Tit. 7, § 153(1), amending section 153, Title 7, Code, to determine whether the suit was subject to revivor. That Act undertakes to make all suits pending in equity and those thereafter instituted survive against the heir, successor or personal representative of a deceased party to such a suit. We have held

that this could not apply to a suit which had then abated when the cause did not survive. Land v. Cooper, 250 Ala. 271, 34 So.2d 313. We also think it cannot serve to keep in court a suit which has ceased to have before it a justiciable controversy. Jefferson County v. Johnson, 232 Ala. 406, 168 So. 450; Shadix v. City of Birmingham, 251 Ala. 610, 38 So.2d 851; Brantley v. Flowers, 254 Ala. 448, 48 So.2d 532.

■■ So that, we must decide whether after the death of W. G. Vaughan there was a justiciable controversy as to what was his marital status when he died. If no question is involved but the marital status, the court will not revive and continue a *divorce suit* pending at the time of the death of a party. But if a suit is for the purpose of *ascertaining* what was his true marital status at the time of his death, not to change it, and such ascertainment is necessary to determine the property rights or the legitimacy of some person, the court will entertain the suit to annul a decree of divorce for fraud, whether or not it is pending at the time of the death of such person. Brantley v. Brantley, 251 Ala. 493, 38 So.2d 8; Ashley v. Ashley, 255 Ala. 313, 51 So.2d 239.

■ It is well settled that the vacation of a fraudulent divorce decree re-establishes the relation of husband and wife when they both are living at that time as if the decree of divorce had not been rendered. The court can then decree their marital rights, as between themselves, as though they had remained husband and wife, and are not affected by the fraudulent decree, and settle all claims of persons holding under them, which arose out of or were dependent upon the divorce decree. Torme v. Torme, 251 Ala. 521, 38 So.2d 497.

In our case of Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820, A. J. Wilkerson obtained a divorce from his wife by decree dated December 16, 1903, and remarried soon afterwards, and died in 1932. His first wife was insane and lived until after his death. She then, by next friend, filed a bill in the nature of a bill of review to vacate the decree of divorce for fraud in procur-

ing it. It was not thought that his death should defeat that suit, and the case was considered on its merits. Decedent made a will devising substantially all his property to his second wife and named her as executrix. The suit by the first wife was directed solely against his second wife, seeking to have her dower and distributive share awarded to her. We held that her claim of fraud was barred by prescription, and denied relief.

The legal right to prosecute the instant suit and the proper parties after the death of W. G. Vaughan resemble the situation in the Wilkerson case. The complainant in the instant case is the first wife as in that case. But here the will is favorable to her, different from the Wilkerson case. There the first wife sought to be restored to her status so she could dissent from the will which was made for the benefit of the second wife, or otherwise obtain a widow's rights. Here the first wife seeks to be restored to her status as such when the husband died, so that the second wife may not be in position as his widow to dissent from the will or otherwise obtain a widow's rights. The authorities fully sustain such a suit after the death of the husband, and that whether it was begun before he died. Other cases supporting the view are: Lucas v. Lucas, 252 Ala. 626, 42 So.2d 457; Cox v. Dodd, 242 Ala. 37, 4 So.2d 736; Fox v. Fox, 235 Ala. 338, 179 So. 237; 17 Am.Jur. 378, 379, § 462.

We have therefore a justiciable controversy for which the suit may be revived and pursued. The principle was the same in Brantley v. Brantley, 251 Ala. 493, 38 So.2d 8. It is not necessary to invoke the declaratory judgments act, section 156, Title 7, Code, since the court has jurisdiction otherwise.

Rule 35, supra, requires a substitution of the "proper parties". Section 153, supra, as amended, requires the substitution of "an heir, successor, or personal representative of a deceased party". In our case of Webster v. Talley, supra, we carefully considered the question of who should be substituted in reviving a suit in equity on the death of a party. We said, among other things, that if the judgment sought is to affect both personal and real estate, the suit could be revived against both personal representative and heirs. That refers to its effect on the quantum of the estate, not on who shall succeed to the estate's ownership.

Decedent in the instant case left surviving four children by his first wife. None are shown by the second wife. His will devises one-half of his property to his first wife and one-half to his four children. His children are not made parties. The real controversy is between the two alleged wives to determine which one of them may dissent from or take under the will, or otherwise take a widow's share. The personal representative has no interest in that controversy. The estate does not stand to gain or lose by the result of that controversy.

The appointment of an administrator ad litem is provided for in section 165, Title 61, Code, and it is required when the estate of decedent must be represented and there is no executor or administrator or he is adversely interested.

We think the interest of the estate is not such as to require personal representation, Ex parte Riley, 247 Ala. 242, 23 So.2d 592; and that appellant is such successor to deceased as to be the proper one to represent his interest in this suit, and to protect her personal rights.

Appellant argues that no property rights are involved in this suit because the will of decedent disposes of all of his property making no provision for appellant; and therefore neither of the alleged widows would be financially interested in the result of the suit. There are two reasons why that contention is not well supported: one is that notwithstanding a will disposes of all of decedent's property, and whether or not it makes provision for the widow, she is entitled without dissenting from the will to an exemption of personal property, Hubbard v. Russell, 73 Ala. 578, and a homestead authorized by law. Johnson v. Johnson, 252 Ala. 366, 41 So.2d 287; Howell v. Ward, 230 Ala. 379, 161 So. 487.

In this connection we refer to the fact that our cases have definitely settled the rights of the widow in this respect whether her actual residence is in Alabama or not, if the domicile of the husband is in Alabama. Curry v. Barnes, 200 Ala. 256, 76 So. 22; Carey v. Hart, 208 Ala. 316, 94 So. 298; Lucky v. Roberts, 211 Ala. 578, 100 So. 878.

Sections 18 and 19, Title 61, Code, make provision for a dissent from the will of the husband. Section 19 fixes a limitation of six months from the probate of the will in which the dissent must be made or else barred. But section 18 provides that if the will makes no provision for the widow she may claim her dower and distributive share as there limited without dissenting from the will.

We have referred to the fact that the will makes no provision for the appellant. So that, if she is finally adjudged to be the lawful widow of the decedent at the time of his death she would be entitled to dower and a distributive share in the property of the deceased as well as an exemption of real and personal property as provided by law. It therefore very distinctly appears that it does affect their financial and property rights to determine who was and is the lawful widow of the deceased. It also appears the decedent was serving in the Armed Forces of the United States at the time of his death, and under federal law his wife would be entitled to a federal pension from the time of his death. Therefore, it would be important to determine, as affecting such property rights, who was his wife at the time of his death, and for that reason alone this suit would be justified. Lawrence v. Nelson, 113 Iowa 277, 85 N.W. 84, 57 L.R.A. 583; Leathers v. Stewart, 108 Me. 96, 79 A. 16; 17 Am.Jur. 379, note 9.

We have now reached the question of whether relief was properly granted complainant on the facts.

■ The equity of the bill is fully supported by the facts alleged. Spencer v. Spencer, 254 Ala. 22, 47 So.2d 252; Miller v. Miller, 238 Ala. 228, 189 So. 768; Johnson v. Johnson, 182 Ala. 376, 62 So. 706.

But appellant insists that the bill is not sufficient when tested by those cases. While the bill in the Spencer case, supra, was held to be subject to demurrer, we think the reasons for so holding have been properly met in the bill as amended in the instant case. In the Spencer case the fraud consisted mainly in the promise to dismiss the divorce suit and the failure to carry out that promise. It was verbal, and as an agreement not operative. And in respect to the fraudulent concoction of a false claim of ground for divorce, that would be available in a suit to annul the decree for fraud only when the respondent in that suit was not negligent in defending it.

It is clear that the instant bill not only alleges that a statement was made by W. G. Vaughan that he would dismiss the suit, but that he had done so. That she was temporarily on a visit in Jacksonville, Florida, when served with notice of the suit. She returned to her home in Florala when he told her he had dismissed the suit. She and he lived together as man and wife for about fifteen months after the bill for divorce was filed, and after he told her it had been dismissed. That she was thereby lulled into inactivity, and relied on his representation and had no cause to doubt its truth, and was thereby prevented from defending the suit.

The bill is very full in the allegations of fraud in concocting a false claim knowing it to be false, and by fraudulent representation that he had dismissed the suit, caused her to continue to live with him as his wife, and make no defense to the suit. The fraud involved not alone a promise to dismiss, verbally made, but a declaration as to a past event—that the dismissal had occurred. It contains all the allegations necessary to make out a case of fraud in concocting a false charge and deceiving her into inactivity.

We think the demurrer was properly overruled.

■ The allegations of the bill were denied, with no other matter asserted by way of defense. On the issues there made, the suit was tried on testimony taken ore tenus before the trial judge. There was no

testimony offered by the respondent. The trial judge discussed the evidence and the conclusions reached upon its consideration. He expressed the view that because the estate of the decedent is not interested in the result of this suit complainant was not disqualified under section 433, Title 7, Code, to testify to transactions with him and statements by him material to the issues. That conclusion is well settled. Clark v. Glenn, 249 Ala. 342(6), 31 So.2d 507; Hanson v. First National Bank, 217 Ala. 426, 116 So. 127; Alexander v. Alexander, 214 Ala. 291, 107 So. 835; Foy v. Dent, 210 Ala. 475, 98 So. 390; Darrow v. Darrow, 201 Ala. 477, 78 So. 383. The cause of the trouble Mr. Pickwick had was corrected in this State by section 433, supra, as originally enacted. The statute and rules of evidence in this State were never intended to prevent parties to a divorce suit from testifying for or against each other when a statute permits parties to testify in other civil proceedings and suits under like circumstances. Lyall v. Lyall, 250 Ala. 635, 35 So.2d 550; Lowry v. Lowry, 170 Ga. 349, 153 S.E. 11, 70 A.L.R. 488, note 499. See, also, Hanson v. First National Bank, supra.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.